**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ALEX KOZIOL, individually and on behalf of all similarly situated individuals, | ) ) ) | |
| *Plaintiff*, | ) ) | |
| v. | ) ) ) | Case No. 1:24-cv-01310 |
| BEFESA ZINC US INC. f/k/a AMERICAN ZINC RECYCLING CORP., a Delaware corporation, | ) ) ) ) | Hon. Jeffrey I. Cummings |
| *Defendant*. | ) ) ) ) | |
| _____ | ) | |

**PLAINTIFF'S *UNOPPOSED* MOTION FOR
FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Dated: April 4, 2025

Evan M. Meyers
Paul T. Geske
Andrew T. Heldut
Colin P. Buscarini
MCGUIRE LAW, P.C.
55 West Wacker Drive, 9th Fl.
Chicago, Illinois 60601
Tel: (312) 893-7002
emeyers@mcgpc.com
pgeske@mcgpc.com
aheldut@mcgpc.com
cbuscarini@mcgpc.com

*Counsel for Plaintiff
and Class Counsel*

## **TABLE OF CONTENTS**

I.     INTRODUCTION ...................................................................................................1

II.    BACKGROUND .....................................................................................................2

    A.  Illinois' Genetic Information Privacy Act ....................................................2

    B.  Plaintiff's Factual Allegations .....................................................................4

    C.  Procedural History And Settlement Negotiations ........................................4

    D.  Class Counsel's Continuing Efforts Since Preliminary Approval................5

III.   THE SETTLEMENT TERMS PRELIMINARILY APPROVED
       BY THE COURT .....................................................................................................6

    A.  The Settlement Class ...................................................................................6

    B.  Monetary Relief And The Settlement Fund .................................................6

    C.  Non-Monetary Relief....................................................................................7

    D.  *Cy Pres* Distribution ....................................................................................7

    E.  Release of Liability.......................................................................................7

    F.  Attorneys' Fees And Incentive Award ........................................................8

IV.   THE SETTLEMENT WARRANTS FINAL APPROVAL ................................9

    A.  The Class Notice Fully Satisfied Due Process ..........................................10

    B.  Certification Of The Settlement Class Under Rule 23 Should Be Confirmed ...........11

    C.  The Settlement Is Fair, Reasonable, Adequate And Should Be Approved ................12

         1.  Plaintiff And Class Counsel Have Adequately Represented
             The Settlement Class .....................................................................12

         2.  The Settlement Was Reached Only After Arm's-Length Negotiations ..........14

         3.  The Settlement Treats Class Members Equitably............................................15

         4.  The Relief Provided By The Settlement Is Fair And Adequate And Warrants

Final Approval .................................................................................. 15

i.      The relief provided by the Settlement is excellent .............................. 16

ii.     The cost, risk, and delay of further litigation compared to the
        Settlement's benefits favors final approval ......................................... 17

iii.    The method of distributing relief to the Settlement Class Members is
        effective and supports final approval................................................... 18

iv.     The requested Fee Award for Class Counsel is reasonable ................. 19

D.  The Remaining Considerations Set Forth By The Seventh Circuit Support
    Approval Of The Settlement ........................................................................... 20

1.  The Reaction of the Settlement Class Favors Approval .................................. 21

2.  Class Counsel's Belief That The Settlement Is In The Best Interests Of
    The Settlement Class Members Weighs In Favor Of Final Approval ............. 21

3.  The Settlement Raises No Red Flags ............................................................... 22

V.      CONCLUSION ..................................................................................................... 23

# TABLE OF AUTHORITIES

**Case**                                                                                          **Page(s)**

*Armstrong v. Board of Sch. Dirs. of City of Milwaukee,*
    616 F.2d 305 (7th Cir. 1980) ................................................................. 9

*Branson v. Caterpillar, Inc.,*
    No. 23 CV 14329, 2024 WL 3823157 (N.D. Ill. Aug. 14, 2024) ............................................ 3

*Bridges v. Blackstone, Inc.,*
    66 F.4th 687, 688 (7th Cir. 2023) ................................................................. 17

*Bynum v. Cmty. Loans of Am., Inc.,*
    20-CV-1564-PP, 2022 WL 10073493 (E.D. Wis. Oct. 17, 2022) ........................................... 14

*Carroll v. Crème de la Crème, Inc.,*
    2017-CH-01624 (Cir. Ct. Cook Cnty. June 25, 2018) ............................................. 16

*Charvat v. Valente,*
    12-CV-05746, 2019 WL 5576932 (N.D. Ill. Oct. 28, 2019) ............................................ 14, 18

*Eisen v. Carlisle & Jacquelin,*
    417 U.S. 156 (1974) ................................................................. 10

*Eubank v. Pella Corp.,*
    753 F.3d at 728 (7th Cir. 2014) ................................................................. 22

*Fournigault v. Independence One Mortgage Corp.,*
    1234 F.R.D. 641 (N.D. Ill. 2006) ................................................................. 13

*Goldsmith v. Tech. Sols. Co.,*
    No. 92 C 4374, 1995 WL 17009594 (N.D. Ill. Oct. 10, 1995) ............................................. 17

*Hudson v. Libre Tech., Inc.,*
    No. 3:18-cv-1371-GPC-KSC, 2020 WL 2467060 (S.D. Cal. May 13, 2020) ........................ 18

*In re AT & T Mobility Wireless Data Services Sales Tax Litig.,*
    789 F. Supp. 2d 935 (N.D. Ill. 2011) ................................................................. 16

*In re Clearview AI, Inc. Consumer Privacy Litig.,*
    21-CV-00135, 2025 WL 875162 (N.D. Ill. Mar. 20, 2025) ...................................... 8

*In re Google LLC Street View Elec. Commc'ns Litig.,*
    No. 10-md-02184-CRB, 2020 WL 1288377 (N.D. Cal. Mar. 18, 2020) ............................ 17

*In re Southwest Airlines Voucher Litig.,*
    No. 11 C 8176, 2013 WL 4510197 (N.D. Ill. Dec. 6, 2013) ............................................. 1, 21

*Isby v. Bayh,*
   75 F.3d 1191 (7th Cir. 1996) ....................................................................9

*McKnight v. United Airlines, Inc.,*
   No. 23-cv-16118, 2024 WL 3426807 (N.D. Ill. July 16, 2024) ...............................2

*Ortiz v. Fibreboard Corp.,*
   527 U.S. 815 (1999) ....................................................................15

*Retsky Family Ltd. P'ship v. Price Waterhouse LLP,*
   No. 97 C 7694, 2001 WL 1568856 (N.D. Ill. Dec. 10, 2001) ...............................21

*Rysewyk v. Sears Holdings Corp.,*
   No. 15-cv-4519, 2019 U.S. Dist. LEXIS 236004 (N.D. Ill. Jan. 29, 2019) .................12

*Rysewyk v. Sears Holdings Corp.,*
   No. 15-cv-4519, 2019 WL 11553475 (N.D. Ill. Jan. 29, 2019) ............................12

*Schulte v. Fifth Third Bank,*
   805 F. Supp. 2d 560 (N.D. Ill. 2011) ..............................................10, 21

*Snyder v. Ocwen Loan Servicing, LLC,*
   No. 14 C 8461, 2019 WL 2103379 (N.D. Ill. May 14, 2019) ...............................11

*T.K. through Leshore v. Bytedance Tech. Co., Ltd.,*
   23-CV-16404, 2024 WL 3425751 (N.D. Ill. July 16, 2024) ...............................14

*Teamsters Local Union No. 604 v. Inter-Rail Transp., Inc.,*
   No. 02-cv-1109, 2004 WL 768658 (S.D. Ill. Mar. 19, 2004) .............................20

*Wong v. Accretive Health, Inc.,*
   773 F.3d 859, 863 (7th Cir. 2014) .............................................12, 16, 20

*Young v. Rolling in the Dough, Inc.,*
   No. 17-cv- 07825, 2020 WL 969616 (N.D. Ill. Feb. 27, 2020).........................14, 18

**Statutes and Rules**

28 U.S.C. § 1715 ...........................................................................9

Fed. R. Civ. P. 23...................................................................*passim*

410 ILCS 513/1 .....................................................................*passim*

**Miscallanoeous Authority**

4 Newberg on Class Actions § 13:1 (6th ed.) .............................................18

4 Newberg on Class Actions § 11.41 (4th ed. 2002) ......................................9

*Manual for Complex Litig.,* § 21.632 (4th ed. 2004) .....................................9

Federal Judicial Center, Judges' Class Action Notice and Claims Process Checklist
   and Plain Language Guide 2010, available at
   www.fjc.gov/sites/default/files/2012/NotCheck.pdf ..............................................................11

I.      **INTRODUCTION**

Plaintiff, Alex Koziol, respectfully requests that this Court grant final approval of the Parties' Class Action Settlement Agreement.[1] This Settlement favorably resolves the Class Members' claims brought under Illinois' Genetic Information Privacy Act ("GIPA"), 410 ILCS 513/1, *et seq.*, and readily meets the fair, reasonable, and adequate standard courts apply when evaluating class settlements. Upon approval, this Settlement – mediated with the assistance of former Illinois Appellate Court Justice James R. Epstein (Ret.) of JAMS Chicago – will provide meaningful relief and significant compensation to the Class.

Following entry of the Court's Preliminarily Approval Order on December 18, 2024 (Dkt. 38), the Settlement Administrator implemented the Settlement's notice plan, including sending direct notice of the Settlement to the Settlement Class Members by U.S. Mail.[2] ***Not a single Class Member objected to the Settlement or chose to opt out***. The complete absence of any opposition to the Settlement further supports the reasonableness of the Settlement. *See In re Southwest Airlines Voucher Litig.*, No. 11 C 8176, 2013 WL 4510197, at *7 (N.D. Ill. Dec. 6, 2013) (finding that the "low level of opposition" from the class "supports the reasonableness of the settlement").

As stated in Plaintiff's Motion for Preliminary Approval, the Parties' Settlement establishes a non-reversionary Settlement Fund in the amount of $244,800.00, which will be fully distributed to the 136 Settlement Class Members *pro rata* following deductions for fees and costs associated with the Settlement. If the Settlement is granted final approval, Plaintiff estimates that each of the Settlement Class Members will receive a payment close to $1,000, which compares favorably with

---

[1] Unless stated otherwise, capitalized terms used in this Motion are intended to be interpreted in accordance with the definitions in Parties' Settlement Agreement, a true and accurate copy of which is attached hereto as Exhibit A.
[2] Out of the 136 notices issued, only 2 have been deemed undeliverable. See Declaration of Amy Lechner of Settlement Administrator Simpluris ("Lechner Decl."), attached as Exhibit B at ¶¶ 7, 9.

1

the potential relief available under GIPA.[3] Conversely, had this Litigation continued, and had Defendant prevailed either on the merits or in opposing class certification, the Class Members would receive nothing whatsoever.

As demonstrated below, the relief provided by the Settlement, along with its equitable and effective method of distribution, is a good result for the Settlement Class, particularly in view of the risks and delays involved in litigating the substantive merits of their claims. Accordingly, Plaintiff respectfully requests that the Court enter an Order: (i) finding that the Settlement is fair, reasonable, and adequate; (ii) granting final approval of the Settlement; and (iii) approving Plaintiff's requested attorneys' fees, reimbursement of litigation expenses, and Service Award, as requested in Plaintiff's previously-filed Motion for Attorneys' Fees (Dkt. 41).

## II.    BACKGROUND

### A.    Illinois' Genetic Information Privacy Act

Illinois enacted GIPA to protect the confidentiality of genetic information and provide individuals with the ability to control how their genetic information is shared and used. *See McKnight v. United Airlines, Inc.*, No. 23-cv-16118, 2024 WL 3426807, at *1 (N.D. Ill. July 16, 2024) ("The Illinois legislature enacted GIPA to combat public fear over the unlawful disclosure of genetic information and discrimination based on that information") (citing 410 ILCS 513/5). In addition to its baseline privacy protections, GIPA expressly prohibits employers from directly or indirectly doing any of the following:

(1)    Solicit, request, require or purchase genetic testing or genetic information of a person or family member of the person, or administer a genetic test to a person or a family member of the person as a condition of employment, preemployment application, labor organization membership, or licensure;

(2)    Affect the terms, conditions, or privileges of employment, preemployment application, labor organization membership, or licensure of any person

---

[3] Plaintiff's estimate is based on a *pro rata* distribution of the Settlement Fund after deductions of $10,740 in settlement administration costs (Lechner Decl. ¶¶ 16, 17), $90,616.49 representing Class Counsel's requested Fee Award, and $5,000 representing the requested Service Award for Plaintiff (Dkt. 41 at 20.)

because of genetic testing or genetic information with respect to the employee
or family member, or information about a request for or the receipt of genetic
testing by such employee or family member of such employee;

(3)     Limit, segregate, or classify employees in any way that would deprive or tend
to deprive any employee of employment opportunities or otherwise adversely
affect the status of the employee as an employee because of genetic testing or
genetic information with respect to the employee or a family member, or
information about a request for, or the receipt of genetic testing or genetic
information by such employee or family member of such employee; and

(4)     Retaliate through discharge or in any other manner against any person alleging
a violation of this Act or participating in any manner in a proceeding under
this Act.

410 ILCS 513/25(c).

As set forth in more detail in Plaintiff's Motion for Preliminary Approval, GIPA defines the

term "genetic information" to include family medical history information, including the

manifestation of diseases or disorders in an individual's family members. *Id.* § 10 (defining "genetic

information" with reference to "the meaning ascribed to it under HIPAA, as specified in 45 C.F.R. §

160.103," which defines genetic information to include "[t]he manifestation of a disease or disorder

in family members of such individual"); *Branson v. Caterpillar, Inc.*, No. 23 CV 14329, 2024 WL

3823157, at *3 (N.D. Ill. Aug. 14, 2024) ("A request for an employee's family medical history . . .

is a request for genetic information under GIPA.") Thus, employers may not solicit, request, require,

or purchase an employee's or a prospective employee's family medical history as a condition of

employment or preemployment application. 410 ILCS 513/25(c)(1).

GIPA also provides a private cause of action to "[a]ny person aggrieved by a violation of

[the] Act." 410 ILCS 513/40(a). A prevailing plaintiff is entitled to recover their actual damages or

liquidated damages of $2,500 for each negligent violation of the statute, whichever is greater; and if

the defendant's violations were intentional or reckless, the plaintiff may recover liquidated damages

of $15,000 for each violation. *Id.* § 40(a)(1)-(2). Additionally, a prevailing plaintiff may recover

reasonable attorneys' fees, costs, and other litigation expenses. *Id.* § 40(a)(3).

3

### B.      Plaintiff's Factual Allegations

Defendant is an owner and operator of steel dust recycling facilities. (Compl. ¶ 22). In or about September 2020, Plaintiff applied for a job with Defendant to work at Defendant's facility in Chicago, Illinois. (*Id.* ¶ 27). Plaintiff alleges that as part of the application and hiring process, Defendant required Plaintiff to submit to a mandatory physical examination. (*Id.* ¶ 28). During the physical, Plaintiff alleges that he was required to answer questions concerning his family medical history, including whether Plaintiff's family members had a history of inheritable conditions such as diabetes, heart disease, and kidney disease. (*Id.* ¶¶ 29-30).

Plaintiff subsequently brought suit, both on his own behalf and on behalf of a putative class of similarly situated individuals, against Defendant for violating Section 25(c) of GIPA which prohibits employers, including Defendant, from directly or indirectly soliciting, requesting, requiring, or purchasing genetic information of a person as a condition of employment or preemployment application. (*Id.* ¶¶ 2, 19, 33, 46); 410 ILCS 513/25(c)(1).

### C.      Procedural History And Settlement Negotiations

On December 18, 2023, Plaintiff filed his Complaint against Defendant in the Circuit Court of Cook County, Illinois. On February 15, 2024, Defendant removed the case to the U.S. District Court for the Northern District of Illinois, where the case was assigned to this Court. (Dkt. 1.) Defendant subsequently moved to dismiss Plaintiff's Complaint under Federal Rule 12(b), contending that: (1) generic family medical history does not constitute genetic information protected by GIPA; (2) Plaintiff fails to allege that the pre-employment medical examination was for an unlawful purpose; and (3) Plaintiff failed to specifically allege Defendant's "state of mind" in violating GIPA and thus could not proceed with his request for heightened statutory damages due to Defendant's reckless or intentional conduct. (Dkt. 13, 14.) The Parties then briefed Defendant's motion to dismiss. (*See* Dkt. 13, 14, 18, 21.)

4

While Defendant's motion to dismiss was pending, the Parties conferred and decided to explore the possibility of resolution. The Parties agreed to attend a mediation with Hon. James R. Epstein (Ret.) of JAMSA and stay the federal court proceedings pending the mediation. Judge Epstein is a former Illinois Appellate Court Judge with over 40 years of experience and has presided over and resolved numerous class action cases. (Declaration of Paul T. Geske in Support of Plaintiff's Unopposed Motion for Final Approval of Class Action Settlement, attached hereto as Exhibit C, ¶ 18).

On August 13, 2024, after the Parties exchanged information to facilitate the negotiation process (including confidential information supporting Defendant's defense of the case), Plaintiff and Defendant and their counsel participated in an arm's-length, full-day mediation session before Judge Epstein. (*Id.* ¶ 19). With the help of Judge Epstein, the Parties successfully reached an agreement in principle to resolve the Litigation.

Over the weeks and months that followed the mediation, the Parties negotiated the contours of the Settlement Agreement, including the settlement structure, the various provisions governing implementation of the Settlement Agreement, and the form of class notice. (*Id.* ¶ 20). Once negotiations concluded, the Parties executed the final Settlement Agreement which the Court preliminarily approved on December 18, 2024.

**D.  Class Counsel's Continuing Efforts Since Preliminary Approval.**

Class Counsel have continued to invest significant time and effort in this matter following preliminary approval. (*Id.* ¶ 26-28). Class Counsel have been actively involved in supervising and managing all aspects of the Settlement Administrator's administration of the notice program. (*Id.*). Prior to the start of the notice period, Class Counsel reviewed and revised the content of the Notices and the Settlement Website to ensure that they were accurate and easy to understand. (*Id.* ¶ 27). Once the notice period began, Class Counsel worked to ensure a smooth notice process by

monitoring notice activity, responding to inquiries and phone calls from Class Members, and regularly communicating with the Settlement Administrator. (*Id.* ¶ 23(m)). Class Counsel will continue to devote their time and effort as the notice process continues, including responding to any inquiries from Class Members and any potential objections, and overseeing the distribution of settlement payments by the Settlement Administrator. (*Id.* ¶ 34).

III.    **THE SETTLEMENT TERMS PRELIMINARILY APPROVED BY THE COURT**

A.    **The Settlement Class**

In granting preliminary approval, the Court conditionally certified a Settlement Class defined as follows:

> All individuals who applied for employment with Befesa US Zinc Inc. in Illinois and who underwent a post-offer physical examination from December 18, 2018 through the date of this Order [December 18, 2024].

(Dkt. 38; Ex. A ¶ 35). In accordance with the Parties' Settlement Agreement, expressly excluded from the Settlement Class are the Court and staff to whom this case is assigned, and any immediate family members of the Court or its staff, as well as all persons who properly execute and submit a timely request for exclusion from the Settlement Class. (*Id.* ¶ 36). These exclusions are standard in class action settlements and do not materially affect the size or makeup of the Settlement Class.

B.    **Monetary Relief And The Settlement Fund**

As stated above, the Settlement entails the creation of a non-reversionary settlement fund in the amount of $244,800. (Ex. A ¶ 22). The Settlement Fund will be fully distributed to Settlement Class Members on a *pro rata* basis after deductions for the costs of settlement administration, a Fee Award, and a Service Award to Plaintiff. (Ex. A ¶ 39.) Settlement Class Members do not need to submit a claim or take any other steps in order to be eligible to claim their individual payment under the Settlement.

Checks sent to Settlement Class members will remain valid and negotiable for ninety (90) days from the date of their issuance and will thereafter become void if not cashed within that time period. (*Id.* ¶ 40). If there are any unclaimed funds due to uncashed checks after the expiration of the 90-day period, the Settlement Administrator will make a second distribution and will redistribute such unclaimed funds evenly amongst Settlement Class members who cashed their initial check. (*Id.*). This second round of checks will again be valid and negotiable for ninety (90) days from the date of their issuance. (*Id.*).

### C.     Non-Monetary Relief

In addition to the Settlement's monetary relief, the Settlement also provides meaningful non-monetary relief tailored to address the claimed GIPA violations. As part of this Settlement, while Defendant has denied liability and continues to deny liability, it has implemented commercially reasonable practices to ensure compliance with GIPA.  (*Id.* ¶¶ 41-42).

### D.     *Cy Pres* Distribution

In the event that there are still unclaimed funds after 120 days following the Settlement Administrator's second distribution, the residual funds from any uncashed checks, less any amounts necessary for remaining Administrative Expenses, will be distributed to one or more *cy pres* recipients proposed by the Parties and designated by the Court. (*Id.* ¶ 39.ix.).

### E.     Release of Liability

In exchange for the monetary and non-monetary relief described above, each Settlement Class Member will provide Defendant and its affiliated entities with a release of all claims arising out of the allegations underlying the claims in this matter, as detailed in Section VI of the Settlement Agreement. (*Id.*)

### F. Attorneys' Fees And Service Award

In recognition of Plaintiff's and Class Counsel's efforts on behalf of the Class Members, the Settlement Agreement allows Plaintiff to petition the Court for a Service Award. (*Id.* § XII). There is no clear sailing provision as to these requests and neither Court approval nor the amount of the Service Award is a condition of the Settlement. (*Id.*)

Prior to the deadline for claims, opt-outs, and objections, Plaintiff filed a Motion for Approval of Attorneys' Fees, Expenses & Service Award (the "Motion for Fees") on February 14, 2025. As stated in the Motion for Fees, Plaintiff has sought an award of attorney's fees in the amount of $81,600 – based on 33.3% of the gross Settlement Fund (or 35.6% of the net Settlement Fund after deductions) – which is well in line with fee awards granted in other class action cases in the Northern District of Illinois and upheld by the Seventh Circuit. *See, e.g., In re Clearview AI, Inc. Consumer Privacy Litig.*, at *9 (N.D. Ill. March 20, 2025) (approving 39.1% fee award and observing that "courts have routinely provided fee awards of 30% or greater of a common fund") (citing *Gaskill v. Gordon*, 160 F.3d 361, 362 (7th Cir. 1998)). As set forth in detail in the Motion for Fees, this amount is appropriate to compensate Class Counsel here for the work they have performed in achieving the Settlement for the Settlement Class, as well as the work remaining to be performed in overseeing the full implementation and administration of the Settlement and assisting Settlement Class Members. Plaintiff's Motion for Fees, which included a request for a $5,000 Service Award for Plaintiff for his significant role in prosecuting this action on behalf of the Class, has been posted on the Settlement Website for all Class Members to review far in advance of the objection/opt-out deadline. None of the Class Members have objected to or opposed the requested Service Award or proposed attorneys' fee award. (Dkt. 41; Lechner Decl. ¶¶ 13, 15 at Ex. B.)

## IV.     THE SETTLEMENT WARRANTS FINAL APPROVAL.

As the Seventh Circuit has recognized, federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain:

> It is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement. In the class action context in particular, there is an overriding public interest in favor of settlement. Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources.

*Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*, 616 F.2d 305, 312-13 (7th Cir. 1980) (citations and quotations omitted), overruled on other grounds by *Felzen v. Andreas*, 134 F.3d 873, 875 (7th Cir. 1998); *see also Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation"); Herbert B. Newberg & Alba Conte, 4 Newberg on Class Actions § 11.41 (4th ed. 2002) (citing cases). The alternative means for handling claims like those at issue here – individual litigation – would unduly tax the court system, require a massive expenditure of public and private resources and, given the relatively small value of the claims of the individual class members, would be impracticable. Thus, the proposed Settlement is the best vehicle for Settlement Class Members to receive relief to which they are entitled in a prompt and efficient manner.

The *Manual for Complex Litigation* § 21.63 (4th ed. 2004) describes a three-step procedure for approval of class action settlements:

1) Preliminary approval of the proposed settlement at an informal hearing;

2) Dissemination of mailed and/or published notice of the settlement to all affected class members; and

9

3) A "formal fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

This procedure, used by courts in this Circuit and endorsed by class action commentators, safeguards class members' due process rights and enables the Court to fulfill its role as the guardian of class interests. 4 Newberg § 11.25. Following entry of the Court's Preliminary Approval Order, the first two steps in this process have occurred. With this Motion, Plaintiff respectfully requests that the Court take the third and final step and grant final approval of the Settlement. Final approval of a class action settlement requires adherence to due process and is further governed by Federal Rules of Civil Procedure 23(a) and 23(b)(3), and 23(e)(2). As explained below, each prerequisite for final approval is satisfied here.

### A.     The Class Notice Fully Satisfied Due Process.

Prior to granting final approval to this Settlement, the Court must consider whether the class members received "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *accord Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974); *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 595 (N.D. Ill. 2011). The "best notice practicable" does not necessarily require receipt of actual notice by all class members in order to comport with both Rule 23 and the requirements of due process.

Here, after preliminary approval, Defendant and the Settlement Administrator compiled the full names and last known contact information for the Settlement Class members ("Class List"), following the detailed procedures set forth in the Settlement Agreement. (Ex. A ¶ 50.) The Court-approved Notice plan called for direct notice via First-Class U.S. Mail to all persons in the Settlement Class for whom a valid mailing address was available and the creation of a Settlement Website. (Ex. A ¶¶ 51, 52.) Prior to issuing direct notice, the Settlement Administrator first updated and/or

attempted to identify addresses through the National Change of Address database or similar resources to ensure that the Class List contained as many up-to-date addresses as possible. (*Id.* ¶ 50.iv.);

On January 16, 2025, the Settlement Administrator sent the Court-approved direct notice via U.S. Mail to all 136 addresses on the Class List. (Lechner Decl. at ¶ 7.) Overall, the Notice plan was highly successful, as notice was effectively delivered to over 98% of the Settlement Class. (*Id*. at ¶9)

The Notice directed class members to the Settlement Website, https://www.bzusgipasettlement.com/, which continues to be available and features the "long form" notice and copies of important court filings (including the Settlement Agreement, the Preliminary Approval Order, and Plaintiff's Motion for Fees), important deadlines, instructions on how to object/opt out and appear at the Final Approval Hearing, and answers to frequently asked questions. (Lechner Decl. ¶¶ 8, 11.) In addition, on November 22, 2024, the Settlement Administrator sent the required notice to the appropriate government entities pursuant to the Class Action Fairness Act, 28 U.S.C § 1715(b). (Lechner Decl. ¶ 4.)

Moreover, there is no claims process or any onerous steps the Settlement Class Members need to take in order to receive a payment. The Settlement Class Members stand to receive monetary compensation under the Settlement via direct checks rather than being required to submit a claim. (Ex. A ¶ 30.vi.) This readily satisfies the requirements of due process. *See* Federal Judicial Center, *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* at 3 (2010).

Accordingly, the Settlement's Notice plan has satisfied all due process concerns and thus weighs in favor of granting final approval.

**B.    Certification Of The Settlement Class Under Rule 23 Should Be Confirmed.**

In its Order granting preliminary approval, the Court found that the prerequisites for maintaining a class action under Federal Rules of Civil Procedure 23(a) and 23(b)(3) had been preliminarily satisfied. (Dkt. 38 ¶ 4.) Specifically, the Court found that the Settlement Class is

11

sufficiently numerous, that common questions predominate, that Plaintiff's claims are typical of the Settlement Class's claims, that Plaintiff and Class Counsel will adequately represent the Settlement Class, and that a class action is a superior method for fairly and efficiently adjudicating this matter. (*Id.*) Because nothing has changed since the entry of the Court's Preliminary Approval Order that would impact these findings, the Court should confirm certification of the Settlement Class for purposes of entering a Final Approval Order.

### C. The Settlement Is Fair, Reasonable, Adequate And Should Be Approved.

Federal Rule of Civil Procedure 23(e) governs court approval of class action settlements and provides that such settlements may only approved "after a hearing and only on finding that it is fair, reasonable, and adequate[.]" Fed. R. Civ. P. 23(e) When deciding whether to grant final approval of a proposed settlement, Rule 23(e)(2) directs courts to consider whether: (1) the named plaintiff and class counsel have adequately represented the class; (2) the settlement resulted from arm's-length negotiations; (3) the settlement treats class members equitably; and (4) the relief provided for the class is adequate. Fed. R. Civ. P. 23(e)(2); *see, e.g., Rysewyk v. Sears Holdings Corp.*, No. 15-cv-4519, 2019 WL 11553475 (N.D. Ill. Jan. 29, 2019) (Citations Not Reported in Fed. Supp., 2019 WL 11553475).[4] Each of these factors supports approval of the instant Settlement.

### 1. Plaintiff And Class Counsel Have Adequately Represented The Settlement Class.

The first Rule 23(e)(2) factor analyzes whether the named plaintiff and class counsel have adequately represented the class. Fed. R. Civ. P. 23(e)(2)(4). This requirement is satisfied where the named plaintiff: "(1) has retained competent counsel, (2) has a sufficient interest in the outcome of

---

[4] The factors to be considered under the 2018 amendment to Rule 23 "overlap with the factors articulated by the Seventh Circuit, which include: '(1) the strength of the case for plaintiffs on the merits, balanced against the extent of the settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the amount of discovery completed.'" *Rysewyk*, 2019 U.S. Dist. LEXIS 236004, at *12 (quoting *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014)).

the case to ensure vigorous advocacy, and (3) does not have interests antagonistic to those of the class." *Fournigault v. Independence One Mortgage Corp.*, 234 F.R.D. 641, 646 (N.D. Ill. 2006).

The first prong of the adequacy analysis is satisfied because Class Counsel have extensive experience in complex litigation and consumer class actions involving statutory privacy claims such as those involving GIPA and BIPA (the Illinois Biometric Information Privacy Act, 740 ILCS § 14/1 *et seq.*) and have been found adequate and appointed class counsel in scores of cases arising under BIPA and various other consumer privacy statutes in this Court and in state and federal courts throughout the country. (Geske Decl. ¶¶ 5-9). Drawing on this experience, Class Counsel were able to effectively evaluate the merits of this case, Defendant's defenses, the benefits of the proposed Settlement, and the attendant risks of litigation. Further, Class Counsel have vigorously pursued the class claims from the outset, from investigating Plaintiff's claims, drafting and filing the complaint, briefing Defendant's Motion to Dismiss, and participating in a formal mediation on behalf of Plaintiff and the Settlement Class Members. (*Id.* ¶¶ 15-23). These efforts culminated in a non-reversionary Settlement Fund that provides all Settlement Class Members with significant cash relief without the need to submit a claim form or other paperwork.

The second and third prongs are also met, because Plaintiff's interests in this case are entirely aligned with, and not antagonistic to, those of the Settlement Class he seeks to represent. Although Defendant maintains that Plaintiff would not be able to certify a class, it is Plaintiff's position that he and the other Settlement Class Members all share identical claims arising from a common course of conduct: Defendant's allegedly unlawful request for genetic information during a preemployment examination. To vindicate those claims, Plaintiff has vigorously prosecuted this action on behalf of the Settlement Class by retaining counsel, agreeing to serve as the putative class representative, reviewing the pleadings filed on his behalf, participating in the settlement process and reviewing the Settlement Agreement prior to signing it, and otherwise making himself available to Class Counsel

13

from this case's inception. (Geske Decl. ¶ 35-37). As such, the Court should find the adequacy of representation prong met.

### 2. The Settlement Was Reached Only After Arm's-Length Negotiations.

The second Rule 23(e)(2) factor – whether the settlement was negotiated at arm's length – addresses a "procedural" concern. Fed. R. Civ. P. 23(e)(2)(B); 2018 Committee Notes. The arm's-length negotiation requirement "aim[s] to root out settlements that may benefit the plaintiffs' lawyers at the class's expense." *T.K. through Leshore v. Bytedance Tech. Co., Ltd*., 23-CV-16404, 2024 WL 3425751, at *11 (N.D. Ill. July 16, 2024) (internal quotation omitted). Here, the record demonstrates nothing but good-faith, non-collusive bargaining between the Parties.

As an initial matter, the fact that the Parties' negotiations spanned many months is indicative of arm's-length negotiating. (*See* Geske Decl. ¶ 21); *Bynum v. Cmty. Loans of Am., Inc.*, 20-CV-1564-PP, 2022 WL 10073493, at *2 (E.D. Wis. Oct. 17, 2022) (the fact that the settlement was negotiated "over a period of numerous months" is evidence of arm's-length negotiations) (quotations omitted). And once the Parties did agree to more formal negotiations, those discussions were overseen by an experienced and impartial mediator. "The best evidence of a truly adversarial bargaining process is the presence of a neutral third-party mediator." *T.K.*, 2022 WL 888943, at *11 (internal quotations omitted). In this case, Judge Epstein's assistance both during and after the full-day mediation was instrumental in bringing this case to a negotiated resolution. *See, e.g.*, *Charvat v. Valente*, 12-CV-05746, 2019 WL 5576932, at *5 (N.D. Ill. Oct. 28, 2019); *Young v. Rolling in the Dough, Inc.*, No. 17-cv- 07825, 2020 WL 969616, at *4 (N.D. Ill. Feb. 27, 2020) (recognizing class settlement "clearly" the product of arm's-length negotiation where agreement reached only after a contested motion, extensive discovery, and an unsuccessful settlement conference before a magistrate judge).

What's more, the arm's-length nature of these negotiations is further confirmed by the Settlement itself: the Settlement Fund is non-reversionary and contains no red flags that might suggest fraud or collusion. *See Snyder v. Ocwen Loan Servicing, LLC,* No. 14 C 8461, 2019 WL 2103379, at *4 (N.D. Ill. May 14, 2019) (finding settlement negotiated at arm's length where "there is no provision for reversion of unclaimed amounts, no clear sailing clause regarding attorneys' fees, and none of the other types of settlement terms that sometimes suggest something other than an arm's length negotiation"). In a similar vein, the release is not overbroad. Defendant is not getting any release that it is not paying for, and the release is tethered to the factual underpinnings of the lawsuit. (Ex. A ¶ 29). Thus, there was no collusion between Class Counsel and Defendant.

### 3. The Settlement Treats Class Members Equitably.

Next, Rule 23(e)(2) requires the proposed settlement to treat class members "equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). Here, each Settlement Class Member has identical GIPA claims against Defendant, which is why they have received and will continue to receive identical treatment under the proposed Settlement. Specifically, the Settlement provides every Settlement Class Member with identical notice and an equal, *pro rata* share of the net Settlement Fund. Because each Settlement Class Member will receive an equal share of the net Settlement Fund, the proposed Settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(2)(D). *See Ortiz v. Fibreboard Corp*., 527 U.S. 815, 855 (1999) (where class members are similarly situated with similar claims, equitable treatment is "assured by straightforward *pro rata* distribution of the limited fund.") Because there is no disparate treatment between members, this factor is also satisfied.

### 4. The Relief Provided By The Settlement Is Fair And Adequate And Warrants Final Approval.

The final and most important factor under Rule 23(e)(2) involves whether the relief provided for the class is adequate. Fed. R. Civ. P. 23(e)(2)(C). In making this determination, Rule 23

identifies several sub-factors, including (i) the cost, risks, and delay of trial and appeal; (ii) the effectiveness of the proposed method of distributing relief to the class; and (iii) the terms of any proposed award of attorneys' fees, including timing of payment. *Id.* This analysis necessarily encompasses two of the Seventh Circuit's factors: "(1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; [and] (2) the complexity, length, and expense of further litigation[.]" *Wong v. Accretive Health, Inc., 773 F.3d 859, 863 (7th Cir. 2014)* (internal citations omitted). The first Seventh Circuit factor, balancing the quality of the settlement against the strength of the merits case, "[is the] most important factor relevant to the fairness of a class action settlement[.]" *In re AT & T Mobility Wireless Data Services Sales Tax Litig.*, 789 F. Supp. 2d at 958 (N.D. Ill. 2011) (internal quotations omitted). This Settlement meets that standard and provides more-than-adequate relief.

### i.       The relief provided by the Settlement is excellent.

First, the Settlement's benefits are an excellent result for the Class Members when balanced against the potential recovery. As stated above, the Settlement provides a fund of $244,800 to be distributed to the approximately 136 individuals in the Settlement Class, which works out to $1,800 per person prior to deduction of administrative costs, court-approved attorneys' fees, and the other expenses associated with the Settlement. Even after these deductions, Class Counsel anticipate that Class Members will each receive close to $1,000.00. This per-person payment amount compares favorably with the likely risk-adjusted recovery if the Class prevailed at trial. 410 ILCS 513/40(a)(1).

Moreover, the Settlement's meaningful cash payments are even more noteworthy when compared to other analogous class settlements in privacy cases, such as early settlements of claims under Illinois' Biometric Information Privacy Act. *See, e.g., Carroll v. Crème de la Crème, Inc.*, 2017-CH-01624 (Cir. Ct. Cook Cnty. June 25, 2018) (providing only credit monitoring and no cash payments). Indeed, many privacy cases have settled for very little, if any, meaningful monetary relief.

16

*In re Google LLC Street View Elec. Commc'ns Litig.*, No. 10-md-02184-CRB, 2020 WL 1288377, at *11–14 (N.D. Cal. Mar. 18, 2020) (approving a settlement providing only *cy pres* relief for violations of Electronic Communications Privacy Act). This further underscores the strength of the relief that the Settlement provides.

In addition to the Settlement's monetary relief, the Settlement also provides non-monetary relief aimed at remedying Defendant's allegedly unlawful conduct. Specifically, Defendant has implemented commercially reasonable practices to comply with GIPA. . (Ex. A ¶¶ 41-42).

### ii. The cost, risk, and delay of further litigation compared to the Settlement's benefits favors final approval.

The Settlement's monetary benefits are even more notable when considered in light of the costs and risks of further litigation. As noted previously, Section 25(c) claims under GIPA are relatively novel and turn on a number of contested and unsettled issues. As the Seventh Circuit has noted, GIPA is one of Illinois' "[l]ess known and litigated" privacy statutes, *Bridges v. Blackstone, Inc.*, 66 F.4th 687, 688 (7th Cir. 2023), and GIPA case law is still rapidly developing. As such, the Settlement Class faced significant obstacles above and beyond the risks inherent in any trial or appeal, and this Settlement secures immediate relief rather than forcing the Settlement Class to endure years of costly and contentious litigation. *See Goldsmith v. Tech. Sols. Co.*, No. 92 C 4374, 1995 WL 17009594, at *4 (N.D. Ill. Oct. 10, 1995) ("As courts recognize, a dollar obtained in settlement today is worth more than a dollar obtained after a trial and appeals years later.").

While Plaintiff believes that he would prevail on the merits, he acknowledges that Defendant has firmly denied his material allegations and raised strong defenses. Defendant has sought dismissal of the Complaint and all of Plaintiff's claims in their entirety, and also indicated that it intends to raise other defenses if this case were to proceed further. Furthermore, Defendant submitted confidential materials to Plaintiff in advance of mediation to further support its defense of the claims in this case. These defenses, if successful, would result in Plaintiff and the proposed Class Members

17

receiving materially less in compensation, or potentially no recovery whatsoever. Furthermore, the state of the law with respect to GIPA violations has been evolving throughout the Litigation—and is still evolving.

Even if Plaintiff prevailed on the merits with respect to these issues, he would also need to succeed in obtaining class certification, which would be highly contested given Defendant's defenses to the case. The prospect of adversarial class certification presents serious risks on its own. *See* Fed. R. Civ. P. 23(e)(2), Advisory Committee's Note to 2018 Amendment (instructing courts to consider the likelihood of certifying the class for litigation in evaluating this sub-factor); *see also Hudson v. Libre Tech., Inc.*, No. 3:18-cv-1371-GPC-KSC, 2020 WL 2467060, at *6 (S.D. Cal. May 13, 2020) ("Proceeding in this litigation in the absence of settlement poses various risks such as failing to certify a class.").

In short, "any relief to class members would still be far down the road and may ultimately be entirely denied." *Charvat*, 2019 WL 5576932, at *7. In contrast, "[a]pproving the proposed settlement agreement will end the case and cause benefits to flow in short order." *Id.*; *see also Young*, 2020 WL 969616, at *5 ("If this case had been litigated to conclusion, all that is certain is that plaintiffs would have spent a large amount of money, time, and effort."). The Settlement provides meaningful, immediate relief to the Settlement Class, avoiding potentially years of complex litigation and appeals with a risk of no recovery whatsoever.

### iii. The method of distributing relief to the Settlement Class Members is effective and supports final approval.

The "effectiveness of [the] . . . method of distributing relief to the class" weighs strongly in favor of the adequacy of this Settlement under Rule 23(e)(2)(C)(ii). An effective distribution method "get[s] as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible." 4 NEWBERG ON CLASS ACTIONS § 13:53 (6th ed. 2023).

As detailed above, the Parties disseminated an effective form and method of Notice that ensured the Class Members would be sent direct notice providing all important information about the Settlement. *See supra* Section VIII; Fed. R. Civ. P. 23(e)(2)(C)(ii). As discussed above, the manner and method of distributing Notice more than satisfied the requirements of Due Process and Rule 23 because all Class Members were sent, and over 98% received, direct notice of the Settlement. (Lechner Decl. ¶¶ 5-9.) Where other class action settlements require Settlement Class Members to submit claims in order to receive compensation, the Settlement here does not require Settlement Class Members to do anything to receive a substantial check. The "direct check" method utilized here is far more efficient than a traditional claims process and will result in many more Settlement Class Members receiving compensation than likely otherwise would. Accordingly, this factor weighs in favor of granting final approval.

### iv.     The requested Fee Award for Class Counsel is reasonable.

The final sub-factor considers the adequacy of the relief provided to the class, in view of "the terms of [the] proposed award of attorney's fees, including timing of payment[.]" Fed. R. Civ. P. 23(e)(2)(C)(iii).

After the Settlement Class received Notice, Plaintiff moved for an award of reasonable attorneys' fees on February 14, 2025. (Dkt. 41). As set forth in Plaintiff's Motion for Fees, the proposed method of calculating attorneys' fees (i.e., the percentage-of-the-fund method) is a standard term consistent with Seventh Circuit precedent and has been used to determine a reasonable fee award in nearly all privacy class action settlements involving a common fund to date. Moreover, the requested fee award of $81,600 – based on 33.3% of the gross Settlement Fund (or 35.6% of the net Settlement Fund after deductions) – is well in line with many common fund fee awards in similar privacy class actions, such those involving claims under BIPA. *See, e.g., Wordlaw v. Enterprise Leasing Company of Chicago, LLC*, No. 20-cv-03200, Dkt. 121 (N.D. Ill. May 8, 2023) (awarding

33% from a gross Settlement Fund of $550,000 in addition to litigation costs and expenses) (Shah, M.); *Peatry v. Bimbo Bakeries USA, Inc.*, No. l:19-CV-2942, Dkt. 101 (N.D. Ill. Jan. 12, 2022) (Ellis, J.) (awarding 35% from a gross Settlement Fund of $295,000 in addition to litigation costs and expenses); *Neals v. ParTech, Inc.*, No. 19-cv-05660, Dkt. 140 (N.D. Ill. July 20, 2022) (Valderrama, J.) (awarding 35% from a gross Settlement Fund of $790,000); *Lopez-McNear v. Superior Health Linens, LLC*, No. 19-cv-2390, Dkt. 69 (N.D. Ill. Apr. 27, 2021) (Pallmeyer, J.) (awarding around 34% from a gross Settlement Fund of $790,000); *Bedford*, No. 20-cv-04574, Dkt. 32 (N.D. Ill. May 12, 2021) (Shah, J.) (approving class counsel's fee request for 33.3% of the settlement fund in BIPA class settlement); *Teamsters Local Union No. 604 v. Inter-Rail Transp., Inc.*, No. 02-cv-1109, 2004 WL 768658, at *1 (S.D. Ill. Mar. 19, 2004) ("In this Circuit, a fee award of thirty-three and one-third (33 1/3%) in a class action is not uncommon").

Finally, as set forth above, no Settlement Class Members have objected to Class Counsel's requested Fee Award or to the requested Service Award to Plaintiff.[5]

### D. The Remaining Considerations Set Forth By The Seventh Circuit Support Approval Of The Settlement.

In addition to the requirements that overlap with those now required by Rule 23(e), the Seventh Circuit requires a few additional considerations: the class's reaction to the settlement, the opinion of competent counsel, and whether the settlement raises any red flags that courts should be wary of. *Wong*, 773 F.3d at 863. Here, each additional consideration weighs in favor of granting final approval.

---

[5] The other Rule 23(e)(2) sub-factor, which requires the parties to identify any side agreements made in connection with the settlement, is inapplicable here because there are no such agreements. Fed. R. Civ. P. 23(e)(2)(C)(iv)

### 1. The Reaction of the Settlement Class Favors Approval.

The Court-approved Settlement Administrator diligently implemented the Notice plan outlined in the Settlement Agreement, and the objection and exclusion deadlines have passed without a single person objecting to the Settlement or even electing to exclude themselves from the Settlement. (Lechner Decl. ¶¶ 12-15.) The complete lack of objections and opt outs strongly support granting final approval of the Settlement. *In re Southwest Airlines Voucher Litig.*, No. 11 C 8176, 2013 WL 4510197, at *7.

### 2. Class Counsel's Belief That The Settlement Is In The Best Interests Of The Settlement Class Members Weighs In Favor Of Final Approval.

Where class counsel has "extensive experience in consumer class actions and complex litigation[,]" their "belie[f] that the [s]ettlement is beneficial to the [c]lass" supports approval of the settlement. *Schulte*, 805 F. Supp. 2d at 586; *see also Retsky Family Ltd. P'ship v. Price Waterhouse LLP*, No. 97 C 7694, 2001 WL 1568856, at *3 (N.D. Ill. Dec. 10, 2001) (finding plaintiff's counsel competent, and their endorsement of a settlement thus supporting approval, where counsel were "experienced and skilled practitioners in the [relevant] field, and [were] responsible for significant settlements as well as legal decisions that enable litigation such as this to be successfully prosecuted") (internal quotations omitted).

As discussed at length in Plaintiff's Motion for Preliminary Approval, Class Counsel are highly experienced in the field of GIPA and BIPA class litigation and are competent to give their opinion on this Settlement. (Dkt. 34.) Put simply, and for the reasons discussed above, Class Counsel believe that the Settlement provides outstanding monetary and non-monetary relief without the uncertainty and delay that years of additional litigation would bring. (Geske Decl. ¶ 23, 39-40.) That is certainly in the best interest of the Settlement Class. (*Id.*) This factor thus weighs in favor of final approval.

### 3. The Settlement Raises No Red Flags.

Finally, the Settlement raises none of the red flags identified by the Seventh Circuit in analyzing class settlements. In *Eubank v. Pella Corp*., the Seventh Circuit identified "almost every danger sign in a class action settlement that our court and other courts have warned district judges to be on the lookout for[.]" 753 F.3d at 728 (7th Cir. 2014). Those signs included (i) a single class containing two adverse subgroups, (ii) a familial relationship between class counsel and the class representative, (iii) failure to establish the amount of class member recovery, (iv) the reversion of any unawarded attorneys' fees to defendant, (v) an advance of attorneys' fees before notice of the settlement was provided to class members, (vi) a provision in the settlement agreement denying incentive awards to class representatives who objected to the settlement, (vii) providing some class members only coupons, and (viii) a complicated claims procedure creating substantial obstacles to recovery. *Id*. at 721-28.

Here, none of those red flags are present. There are no subgroups to the Settlement Class, and the Class Representative, Mr. Koziol, has no familial or other relationship with Class Counsel or any member of their law firm. The Notice here is simple and straightforward: Class Members received direct notice via U.S. mail and will directly receive payment in the same way. The Settlement Fund will be distributed to Class Members on a *pro rata* basis, and no amount will revert to Defendant (Ex. A ¶ 39.ix.) There has also been no advance of attorneys' fees to Class Counsel, and there is no provision in the Settlement Agreement denying an incentive award to a named plaintiff who does not support the Settlement. Altogether, the Settlement here is beneficial to Class Members and displays no warning signs that should give this Court pause. The Settlement should therefore be finally approved.

## V.    <u>**CONCLUSION**</u>

For the foregoing reasons and the reasons set forth in Plaintiff's Motion and Memorandum of Law for Approval of Attorneys' Fees, Expenses, and Service Award (Dkt. 41), Plaintiff respectfully requests that the Court enter an Order: (i) finding that the Settlement is fair, reasonable, and adequate; (ii) granting final approval of the Settlement; (iii) approving Class Counsel's requested Fee Award; (iv) approving Plaintiff's requested Service Award; and (v) providing such other and further relief as the Court deems reasonable and just.[6]

Dated: April 4, 2025

Respectfully submitted,

ALEX KOZIOL, individually and on behalf of similarly situated individuals,

By: /s/ Andrew T. Heldut_____
One of Plaintiff's Attorneys

Evan M. Meyers
Paul T. Geske
Andrew T. Heldut
Colin P. Buscarini
MCGUIRE LAW, P.C.
55 W. Wacker Drive, 9th Fl.
 Chicago, IL 60601
Tel: (312) 893-7002
emeyers@mcgpc.com
pgeske@mcgpc.com
aheldut@mcpgc.com
cbuscarini@mcgpc.com

*Attorneys for Plaintiff and Class Counsel*

---

[6] For the Court's convenience, Exhibit A to the Settlement Agreement contains a proposed Final Approval Order for the Court's consideration.

**CERTIFICATE OF SERVICE**

I hereby certify that on April 4, 2025, I caused the foregoing *Plaintiff's Unopposed Motion for Final Approval of Class Action Settlement* to be electronically filed with the Clerk of the Court using the CM/ECF system. A copy of said document will be electronically transmitted to all counsel of record.

/s/ Andrew T. Heldut